**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LOUIS HERNANDEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 10-cv-1522 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| COTTRELL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

This is a diversity case in which Plaintiff Louis Hernandez alleges that he was injured while using a product manufactured by Defendant Cottrell, Inc. Before the Court are Defendant's motion for summary judgment [96] and Plaintiff's motion to strike Defendant's reply brief [111]. For the reasons stated below, the Court denies both motions. This matter is set for status on April 16, 2014, at 9:00 a.m.

**I.      Facts**

The facts taken below are drawn from the parties' Local Rule 56.1 submissions and, to the extent necessary, the evidence in the record on which those submissions rely. Only properly supported facts are considered, and properly supported facts that are not disputed are taken as true for purposes of the summary judgment motion. See, *e.g.*, *F.T.C. v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005) ("Because of the important functions local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, [the Seventh Circuit has] consistently upheld the district court's discretion to require strict compliance with those rules."). All facts are taken in the light most favorable to Plaintiff, the nonmoving party. See, *e.g.*, *Swetlik v. Crawford*, 738 F.3d 818, 821 (7th Cir. 2013).

Defendant Cottrell, Inc. is a citizen of Georgia. [98] ¶ 2. It is in the business of designing, manufacturing, and selling automobile transport trailers. *Id.* Plaintiff Louis Hernandez was employed by non-party Cassens Transport Company. [108] ¶ 2. Cassens is headquartered in Illinois. [108] ¶ 4. Plaintiff "lived in Rutherford County, Tennessee, from 2006 to the present." [98-2] at 104:22-25. He typically worked out of Cassens's terminal in Smyrna, Tennessee, but temporarily was working out of the Aurora, Illinois terminal for "more than two months" in 2008. See [98] ¶ 9; [98-2] at 102:14-20, 103:19-21; [101] ¶ 9.

On November 7, 2008, Plaintiff's assignment required him to travel to Elwood, Illinois. [108] ¶ 9. Plaintiff claims that he injured his left groin area, left shoulder, back, and other areas as a result of using Defendant's product while in Elwood, Illinois. See [108] ¶ 1. Defendant's product was titled in the State of Illinois. [108] ¶ 23. Plaintiff reported the incident to his supervisor at the Aurora terminal. [108] ¶ 11. Aside from a visit to an emergency room in Indiana, however, all of Plaintiff's subsequent medical treatment, including back and shoulder surgery, occurred in Tennessee. [98] ¶¶ 7, 10. All of Plaintiff's treating physicians and surgeons are in Tennessee, and he has filled all of his prescriptions in Tennessee. [98] ¶ 11. Plaintiff currently is looking for new employment in Tennessee. [98] ¶ 14. Plaintiff is receiving workers' compensation benefits from Illinois. [108] ¶ 18. He did not seek and has never received workers' compensation benefits from Tennessee for the November 7, 2008 incident.

Plaintiff filed the instant lawsuit alleging claims of strict products liability and negligence products liability in Illinois state court on January 29, 2010. See [1-2]. Defendant removed the case to this Court on March 9, 2010. See [1]. Defendant has moved for summary judgment on the sole ground that Plaintiff's action is untimely.

## II.     Summary Judgment Standard

Summary judgment is appropriate if, construing all facts and drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 566 (7th Cir. 2012); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute."  *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence to permit a jury to return a verdict for the nonmoving party. *Carroll*, 698 F.3d at 564 (7th Cir. 2012). This Court neither judges the credibility of witnesses nor evaluates the weight of the evidence when addressing a summary judgment motion, see *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir.2009); however, Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III.     Discussion

### A.     Motion to Strike

Plaintiff has moved to strike Defendant's reply brief [111] on the grounds that the reply brief improperly raises new arguments in a manner that is prejudicial to Plaintiff.  Defendant opposes the motion to strike [114] and seeks the costs and fees incurred in responding to it.  See [114] at 4.  The Court in its discretion denies both the motion and the request for fees and costs. Defendant is entitled in its reply brief to elaborate upon the arguments that it previously raised

and to refute arguments raised by Plaintiff. To the extent that Defendant's reply brief raises improper arguments or injects new facts, the Court does not consider them.

### B. Motion for Summary Judgment

Defendant argues that it is entitled to judgment as a matter of law because Plaintiff's claim is barred by the applicable statute of limitations. [96] at 1. In Defendant's view, Plaintiff's claims "arose in" Tennessee and accordingly are subject to its one-year limitations period for personal injury claims, see Tenn. Code Ann. § 28-3-104, by virtue of Illinois's "borrowing statute," 735 ILCS 5/13-210. See generally [96]; [97]. Plaintiff contends that his claims "arose in" Illinois such that the applicable statute of limitations is the two-year period set forth in 735 ILCS 5/13-202. The parties agree that the date on which Plaintiff's accident occurred was November 7, 2008. See [97] at 2; [103] at 1.

In a diversity case such as this one, the Court "must follow the statute of limitations that the state in which it is sitting would use." *Thomas v. Guardsmark*, 381 F.3d 701, 707 (7th Cir. 2004) (citing *Guar. Trust Co. v. York*, 326 U.S. 99, 110 (1945)). "Under traditional choice of law principles, the law of the forum state controls procedural questions, and the law of the state in which the cause of action accrued governs substantive issues." *Cox v. Kaufman*, 571 N.E.2d 1011, 1015 (Ill. App. Ct. 1st Dist. 1991). "Statutes of limitations are procedural, merely fixing the time in which the remedy for a wrong may be sought, and do not alter substantive rights." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 194 (Ill. 2002); see also *Relf v. Shatayeva*, 998 N.E.2d 18, 33-34 (Ill. 2013). "Thus, an action cannot be maintained in the forum state if it is barred either by the statute of limitations of the forum state or by a statute of limitations that the forum state has 'borrowed' from another jurisdiction in accordance with the forum state's 'borrowing statute.'" *Newell Co. v. Petersen*, 758 N.E.2d 903, 908 (Ill.

App. Ct. 2d Dist. 2001).  The standard limitations period governing personal injury actions in Illinois is two years.  See 735 ILCS 5/13-202; 735 ILCS 5/13-213(d).  If these statutes apply, Plaintiff's suit, which was filed in early 2010, is timely.  Defendant maintains that the Court should apply Illinois's "borrowing" statute and "borrow" the one-year limitations period codified in Tennessee law, see Tenn. Code Ann. § 28-3-104, which would render Plaintiff's claims untimely.

The Illinois "borrowing" statute provides:

> Foreign limitation.  When a cause of action has arisen in a state or territory out of this State, or in a foreign country, and, by the laws thereof, an action thereon cannot be maintained by reasons of the lapse of time, an action thereon shall not be maintained in this State.

735 ILCS 13/210.  Illinois courts apply this "borrowing" statute when: "(1) the cause of action accrued in another jurisdiction; (2) the limitations period of that jurisdiction has expired; and (3) all parties were non-Illinois residents at the time the action accrued and remained so until the foreign limitations period expired."  *Newell Co.*, 758 N.E.2d at 908; see also *Ennenga v. Starns*, 677 F.3d 766, 774 n.3 (7th Cir. 2012).  Here, the sole dispute concerns where the cause of action "arose."  The Court notes that the Illinois Appellate Court in *Newell* equates the terms "arose" and "accrued."  Compare 735 ILCS 13/210 *with Newell*, 758 N.E.2d at 908.  "The terms 'arose' and 'accrued' often are conflated, because, other than in cases in which the discovery rule is invoked, usually the date on which the cause of action 'accrues' is the date on which it 'arises.'" *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 733 (7th Cir. 2010).  Claims "accrue" when the statute of limitations begins to run.  *Id.*  For products liability actions in which the plaintiff alleges that his injury was caused by a "sudden traumatic event" rather than some latent physical injury, the cause of action accrues on the date the injury occurs.  *Golla v. Gen. Motors Corp.*, 657 N.E.2d 894, 899 (Ill. 1995).  Although Defendant disputes causation, both parties identify

November 7, 2008 as the pertinent date in this case and there is no dispute that Plaintiff was in Illinois on November 7, 2008. These facts at least superficially suggest that the cause of action "arose" in Illinois.

So too does the more nuanced "most significant relationship" test used by Illinois courts in cases like this one. See *Nichols v. G.D. Searle & Co.*, 668 N.E.2d 1101, 1103 (Ill. App. Ct. 1st Dist. 1996); see also Restatement (Second) of Conflicts of Law § 142 (1971).[1] "Under this test, the law of the place of injury is presumed to apply, unless some other jurisdiction is shown to have a greater relationship to the facts of the case." *Nichols*, 668 N.E.2d at 1103. The "most significant relationship" test is drawn from the Restatement (Second) of Conflicts of Law (1971), which sets forth four contacts for the Court to consider in assessing which jurisdiction has the "most significant relationship" to the facts of the case:

(a)     the place where the injury occurred;
(b)     the place where the conduct causing the injury occurred;
(c)     the domicil, residence, nationality, place of incorporation, and place of business of the parties; and
(d)     the place where the relationship, if any, between the parties is centered.

---

[1] Restatement § 142, which pertains directly to statute of limitations issues, also incorporates the most significant relationship test:

Whether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6. In general, unless the exceptional circumstances of the case make such a result unreasonable:
(1) The forum will apply its own statute of limitations barring the claim.
(2) The forum will apply its own statute of limitations permitting the claim unless:
(a) maintenance of the claim would serve no substantial interest of the forum; and
(b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

Restatement (Second) of Conflicts of Law § 145(2); see also *Nichols*, 668 N.E.2d at 1103. The "most significant relationship" test also requires consideration of the general choice-of-law principles enumerated in Section 6 of the Restatement:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>> (a) the needs of the interstate and international systems,
>> (b) the relevant policies of the forum,
>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>> (d) the protection of justified expectations,
>> (e) the basic policies underlying the particular field of law,
>> (f) certainty, predictability and uniformity of result, and
>> (g) ease in the determination and application of the law to be applied.

Because it does not matter whether the Court begins with § 145(2) or § 6, see *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 903 (Ill. 2007), the Court begins with § 145(2).

Here, the injury (alleged injury, in Defendant's view) occurred in Illinois. Defendant contends that this contact is irrelevant – and, moreover, that the presumption in favor of applying the law of the place of the injury should not apply – because "the location of the accident here was merely fortuitous." [97] at 5, 7-8. Defendant points to Plaintiff's deposition testimony that the accident "just as easily could have happened somewhere else" as evidence of the fortuity. See *id.* at 5-6. Defendant also asserts that "[t]his is a design-defect case with the alleged design defect going wherever the product goes." *Id.* at 8.[2]

Although there is indeed a line of cases dismissing the place of the injury as "fortuitous," these cases typically involve automobile or airplane accidents that occurred while the vehicle

---

[2] Defendant also directs the Court to a recent Florida decision in which the court concluded that Tennessee was the state with the most significant relationship to the action and accordingly applied Tennessee law. See [97] at 1-2, Ex. 1; [107] at 4-5. The Court does not find the six-paragraph decision of the Florida court particularly persuasive because it (1) rests on Florida law and (2) does not contain any facts demonstrating its similarity to the instant case.

was in transit. See, *e.g.*, *Ingersoll v. Klein*, 262 N.E.2d 593 (Ill. 1970); *Schulze v. Ill. Highway Transp. Co.*, 423 N.E.2d 278 (Ill. App. Ct. 3d Dist. 1981). The Seventh Circuit has dubbed these types of cases "flyover" cases, and this case "has none of the trappings of a 'flyover' case." *Jaurequi v. John Deere Co.*, 986 F.2d 170, 175 (7th Cir. 1993). Like the plaintiff in *Jaurequi*, Plaintiff was stationed in Illinois and, but for the accident, presumably would have remained there until his temporary assignment was completed. See *Jaurequi*, 986 F.2d at 170. Plaintiff's conduct here was not akin to a "fortuitous transversing" of Illinois soil. See *id.*

The non-flyover cases to which Defendant points, *Gregory v. Beazer East*, 892 N.E.2d 563 (Ill. App. Ct. 1st Dist. 2008), and *Demyrick v. Guest Quarters Suite Hotel*, 850 F. Supp. 724 (N.D. Ill. 1994), are equally inapposite. In *Gregory*, the decedent, a pipe fitter, was exposed to asbestos at various points in his career and eventually was diagnosed with mesothelioma attributed to that exposure. His wife brought a negligence suit against various defendants, including the manufacturer of an asbestos-containing "mud" that the decedent had used while installing drywall. The vast majority of the decedent's employers and jobsites were in Indiana, but some of the drywall jobs he performed were in Illinois; his wife sought to apply Illinois law to his claims against the mud manufacturer. The Illinois Appellate Court concluded that the place of injury was not an important factor in the choice-of-law analysis. See *Gregory*, 892 N.E.2d at 582. That conclusion, however, was not based on "fortuity" but rather was predicated on the dearth of evidence concerning the Illinois-based nature of the decedent's drywall jobs, the "minimal" nature of those jobs in the context of his forty-year career as a pipe fitter, and the fact that the bulk of the decedent's work was performed in Indiana. See *id.*

Likewise, the court's conclusion in *Demyrick* was predicated not on fortuity but on justified expectations (a consideration enumerated in Section 6 of the Restatement). In *Demyrick*,

a California-resident road manager for musical group Boyz II Men was killed while the band was staying at an Illinois hotel. His employer, also based in California, opposed the hotel's contribution claim. The issue was whether the decedent's employer, which "provided him with workers' compensation coverage wherever the performance of his duties might take him," was "to be subjected to the laws in effect anywhere that a compensable injury might occur—rather than its liability being governed by the law of the jurisdiction where it provided coverage and where all of the benefits have been paid." *Demyrick*, 850 F. Supp. at 726. In concluding that California law should apply, the court found it important that the employer-decedent relationship had all of its roots in California and that "as part of the employment relationship [the employer] provided workers' compensation benefits in that state." *Id.* at 727. The court noted that under those circumstances, "it would be extraordinarily unfair to alter [the employer's] legal responsibilities dramatically because of the purely aleatory circumstance that disaster struck [the decedent] while he happened to be in Illinois." *Id.* The court emphasized that a California-based employer would have justified expectations that California law would apply to actions involving its workers' compensation payments, and that it would be "unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state." *Id.* (quotation omitted).

In short, the Court is not persuaded by the case law that Defendant has marshaled in support of its fortuity argument. The Court also finds it puzzling that, in this "design-defect case with the alleged design defect going wherever the product goes," Defendant, which is based in Georgia, would advocate for the application of Tennessee law rather than seek the consistent application of Georgia law. (The Court notes, however, that Georgia, like Illinois, has a two-year statute of limitations on products liability actions. See Ga. Code Ann. §§ 9-3-33, 51-1-11;

*Daniel v. Am. Optical Corp.*, 304 S.E.2d 383, 384-85 (Ga. 1983)).  In any event, the Court concludes that the first contact – place of the injury – favors Illinois, and is not rendered impotent by virtue of "fortuity."

The second contact, the place where the conduct causing the injury occurred, is, as Plaintiff puts it, "not as easily resolved as the first."  [103] at 6; see also [97] at 12 ("The place where the 'conduct occurred' is unclear, but may be Tennessee or Georgia.").  Defendant is a Georgia corporation that designed and manufactured the product in Georgia.  There is no evidence in the record that Defendant had outposts in either Tennessee or Illinois.  The product was used in Illinois.  Any negligence on the part of Plaintiff (which is yet to be determined) would have occurred in Illinois.  To the extent that Defendant alleges that Plaintiff was not trained properly, and that lack of training contributed to his own negligence, Tennessee may be marginally implicated – though his employer was based in Illinois, and it is unclear whether any training materials or protocols would have been developed there.  The Court does not find persuasive Defendant's contention that Plaintiff's post-accident receipt of medical treatment in Tennessee renders Tennessee the "place where the conduct occurred," see [97] at 6-7, particularly in light of Defendant's suggestion in its response to Plaintiff's motion to strike that "the fact that this plaintiff chose to file the comp case in Illinois is irrelevant to choice of law because that would mean a plaintiff could choose what law would apply by his after-accident conduct."  [114] at 7 n.1  Whether Plaintiff is exaggerating his symptoms or otherwise malingering remains to be seen; where he receives treatment is at best minimally instructive on the issue of where the liability-related conduct occurred.  The bottom line is that the second contact is indeterminate.

The third contact, the domicil, residence, nationality, place of incorporation, and place of business of the parties, is equally inconclusive. Plaintiff's permanent residence was in Tennessee, as was his permanent job, but at the time of the incident he was working in Illinois on a temporary assignment of at least two months in duration. Defendant is incorporated in Georgia and is considered a resident of Georgia for purposes of the borrowing statute. See *Nichols*, 668 N.E.2d at 1103. As Plaintiff points out, "[t]here is no evidence in this record that Defendant has any contacts with Tennessee." [103] at 9.

The fourth contact, the place where the relationship, if any, between the parties is centered, also favors Illinois. Defendant argues that it "had no relationship with plaintiff until he went to work using Cottrell rigs in Tennessee," and that "any relationship between plaintiff and Cottrell is centered in Tennessee, where his main terminal is and where he went to work near his home." [97] at 12. However, nothing in the Local Rule 56.1 statements indicates that Plaintiff ever used the product at issue on any occasion prior to November 7, 2008. See [98], [108]. (Nothing in the record properly before the Court at this time even elaborates on what Defendant's product *is*.) Additionally, as pointed out by Plaintiff, see [103] at 9, Illinois case law suggests that the relationship between the parties "is centered in the state where each plaintiff was prescribed and used" the product, which here is Illinois. *Nichols*, 668 N.E.2d at 1103.

Of the four contacts, then, two – the place of the injury and the place where the relationship is centered – clearly favor Illinois. The other two are less clear but implicate Illinois, Tennessee, and Georgia. On the whole, then, this first portion of the "most significant relationship" test bolsters rather than undermines the presumption in favor of applying Illinois's statute of limitations.

The Court must not merely count contacts; rather, it must consider them in light of the general principles embodied in section 6 of the Restatement. See *Townsend*, 879 N.E.2d at 906. Those principles also fail to tip the scales against the presumption that Illinois has the most significant relationship to this action. Both sides discount the relevance of the first principle, the needs of the interstate and international systems. See [97] at 10; [103] at 10. As to the second factor, the relevant policies of the forum, Defendant contends that "Illinois certainly has no interest, under its borrowing statute, of reviving Tennessee citizens' claims against Georgia companies filed in Illinois." [97] at 10.[3] Defendant does not elaborate on this point in its reply brief, aside from a general assertion that the basic policy underlying statutes of limitation in Illinois is to "afford a defendant a fair opportunity to investigate the circumstances upon which liability against him is predicated while the facts are accessible." [107] at 9 (quoting *Roth v. N. Assurance Co.*, 203 N.E.2d 415, 420 (Ill. 1964)). Defendant also contends that the policy underlying Illinois's "borrowing statute" is the deterrence of forum shopping. See *id.* Neither one of these policies would be undermined if Illinois's two-year statute were applied; there is nothing in the record suggesting either that Plaintiff was forum shopping, or that Defendant would be deprived of an opportunity to gather evidence. Plaintiff argues that Illinois has a "strong interest in applying its products liability law to regulate culpable conduct occurring within its borders, induce the design of safer products, and deter future misconduct." [103] at 11. Plaintiff also contends that Illinois has a policy interest in ensuring that corporations within its borders are able to recover under its workers' compensation laws. See *id.* Although Plaintiff's arguments are coherent, they too miss the mark; the Court is considering at this juncture which state's statute of limitations should apply, not necessarily which state's substantive law should

---

[3] Defendant also more colorfully asserts that "the Big 10 country of Illinois has little, if any, interest in this SEC dispute between a Tennessee citizen and Georgia citizen." [97] at 10.

apply.[4]   (The same is true of Defendant's arguments as to the fifth factor, the basic policies underlying the particular field of law.  See [97] at 11.)

The third factor is the relevant policies of other interested states, here Tennessee and possibly Georgia, and the relative interests of those states in the determination of the particular issue.  Plaintiff again emphasizes substantive policies regarding products liability, see [103] at 11-12, while Defendant contends in its opening brief simply that this factor "favors Tennessee, as this case fits squarely within the borrowing statute's premise."  [97] at 10.  To the extent that Defendant's reply brief arguments concerning Tennessee's policies are proper, they are largely irrelevant because Defendant is not a Tennessee citizen protected by them and Plaintiff's suit in Illinois has little bearing on insurance premiums and costs borne by Tennessee consumers.  On these arguments, the Court cannot conclude that Tennessee's interest is the predominant one here.  The same is true with regard to the fourth factor, the protection of justified expectations.  Plaintiff does not address this factor at all, see [103] at 10, and Defendant contends only that it favors Tennessee because Plaintiff "knew or should have known through counsel that Illinois's borrowing statute may point to another statute of limitations."  [97] at 11.  This minimally supported argument provides no indication as to why Plaintiff should have expected Tennessee's statute of limitations (rather than, say, Georgia's) to apply, or why Defendant "had no justified expectation that Illinois law would apply."  [97] at 11.  The Court accordingly gives little weight to this factor.

The final three factors do not point strongly to either Tennessee or Illinois.  Neither party has indicated how or why the basic policies underlying statutes of limitation point one way or the other (or even differ materially between the states).  Considerations of certainty, predictability,

---

[4] The Court notes, however, that the analysis required to determine which substantive law should apply is very similar to that performed here.  See *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898-910 (Ill. 2007).

and uniformity do not counsel toward Tennessee merely because, as Defendant suggests, "Illinois courts have long avoided a rote application of *lex loci*." [97] at 11. The final factor, ease in the determination and application of the law to be applied, favors neither forum, as the Court must undertake a single analysis and is confident in its ability to apply a straightforward statute of limitations from either Illinois or Tennessee.

After considering the relevant factors and choice of law principles, the Court concludes that the cause of action "arose in" Illinois, the state with the most significant relationship to this litigation. Accordingly, the "borrowing statute" does not apply, and Illinois's two-year statute of limitations governs. The motion for summary judgment [96] is denied, and Plaintiff's timely claims may move forward.

## IV.     Conclusion

For the reasons stated above, the Court concludes that Plaintiff's claims "arose in" Illinois and therefore are subject to – and timely under – Illinois's two-year statute of limitations. Defendant's motion for summary judgment on statute of limitations grounds [96] is denied. Plaintiff's motion to strike [111] also is denied. This matter is set for status on April 16, 2014, at 9:00 a.m.


Dated:  March 31, 2014

_____
Robert M. Dow, Jr.
United States District Judge